UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COURTNEY WEBSTER, | ) | |
| BRIAN WEBSTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-02677-JMS-DML |
| | ) | |
| CENTER FOR DIAGNOSTIC IMAGING, INC. | ) | |
| d/b/a CDI | ) | |
| d/b/a CDI INDIANAPOLIS, | ) | |
| CDI INDIANA, LLC | ) | |
| d/b/a CDI | ) | |
| d/b/a CDI INDIANAPOLIS, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

This case involves a suit for damages stemming from a missed cancer recurrence diagnosis. Courtney Webster alleges that her recurrent rectal cancer went undiagnosed for over a year and a half after her CT scan was misread. She and her husband Brian now seek to hold Center for Diagnostic Imaging, Inc. and CDI Indiana, LLC (collectively, "<u>Defendants</u>") liable for damages as a result of the misdiagnosis. Defendants, however, contend that they are not liable because the doctor who misread Ms. Webster's scan was neither their actual nor apparent agent.

This matter is before the Court on Defendants' Motion for Summary Judgment and on Courtney and Brian Webster's Cross-Motion for Partial Summary Judgment. In addition, Defendants filed a Motion to for Leave to File a Rebuttal, which the Court will also consider.

The determinative question before this Court on summary judgment is whether an Indiana Supreme Court decision regarding apparent agency – *Sword v. NKC Hospitals*, 714 N.E.2d 142 (Ind. 1999) – applies to the facts of this case.

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d

892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not . . . imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts, different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

## II.
### BACKGROUND

The background facts of this case are not in dispute[1] and involve both the narrative of Courtney Webster's medical treatment, as well as the underlying contractual relationships among various entities.

### A. Courtney Webster's Medical Treatment

In 2009, Courtney Webster underwent treatment for rectal cancer.  [Filing No. 41-1; Filing No. 41-2.]  By 2010, her medical exams showed no signs of cancer, but she underwent follow-up colonoscopies periodically over the next three years, none of which detected cancer.  [Filing No. 41-3.]

On October 27, 2014, Ms. Webster visited her gastroenterologist complaining of constipation.  [Filing No. 41-4.]  She underwent a colonoscopy a few days later, which revealed a "large mass" and a "flat polyp."  [Filing No, 41-5 at 1.]  Based on these results, the doctor who performed the colonoscopy recommended that Ms. Webster schedule a CT scan "at the next available appointment."  [Filing No, 41-5 at 2.]

Less than two weeks later, on November 17, 2014, Ms. Webster underwent a CT scan, the results of which were signed by Dr. Michael Walker the following day.  [Filing No. 41-9; Filing No. 41-11 at 2.]  Ms. Webster recalls that although she originally planned to go to a St. Vincent facility for the scan, "a representative from my insurance company at the time, United Healthcare, called me and said CDI would be less expensive and gave me CDI's address at 11900 N. Meridian

---

[1] Local Rule 56-1 (b) provides that "a party opposing a summary judgment motion" must file a response that includes "a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."  In this case, all parties declined to include a "Statement of Material Facts in Dispute" section in their respective response briefs.  As such, the Court concludes that the facts set forth herein are not in dispute.

St. in Carmel, IN." [Filing No. 41-7 at 2.]  In the days leading up to and following her CT scan, Ms. Webster received the following information about the medical center where her scan was performed:

- On November 12, 2014, Ms. Webster electronically signed a Patient Registration Information form that featured the name "CDI Indianapolis North" at the top and provided, in part, that payment of insurance benefits be made directly to "Medical Scanning Consultants, P.A. d/b/a Center for Diagnostic Imaging and CDI Indiana, LLC." [Filing No. 41-9.]  The form also contained a provision in which Ms. Webster assigned to "Center for Diagnostic Imaging, Inc." claims for payment against her insurance company related to services provided to her.  [Filing No. 41-9.]

- On November 17, 2014, the date of Ms. Webster's scan, the signage at 11900 N. Meridian Street contained a logo with the letters "CDI" in the center, and the words "CENTER FOR DIAGNOSTIC IMAGING" next to the logo, as follows:



. [Filing No. 42-4 at 4.]

- On November 17, 2014, Ms. Webster signed a Notice of Privacy Practices form that provided, in part, that "Medical Scanning Consultants, P.A." was "doing business as Center for Diagnostic Imaging (CDI)." [Filing No. 41-10 at 1.]

- The CT Report containing Ms. Webster's test results features the name "CDI Indianapolis North" at the top and bears the following logo with the letters "CDI" in the center: [Filing No. 41-11 at 1.]  The CT Report is signed by Dr. Walker, as follows:

Interpreting Physician
_____

Michael Walker

Medical Scanning Consultants, P.A.
Michael Walker, MD
*Electronically Signed:* 11/18/14 10:16 am
[Filing No. 41-11 at 2.]

In sum, between November 12 and November 18, 2014, it is undisputed that Ms. Webster encountered representations from the center that listed 6 entities:

1. CDI Indianapolis North

2. Medical Scanning Consultants, P.A.

3. Center for Diagnostic Imaging

4. CDI Indiana, LLC

5. Center for Diagnostic Imaging, Inc.

6. CDI

During this time period, Ms. Webster never visited the website www.mycdi.com (the "website"), which was maintained by Center for Diagnostic Imaging, Inc. and was available to and intended to be accessed by anyone. [Filing No. 41-8 at 6; Filing No. 42-3 at 1-2.] The website contained links entitled "We Are A Provider," and "We Are A Radiology & Physician Management Company," among others. [Filing No. 42-1 at 7-8.]

By March, 2016, Ms. Webster again complained of constipation. [Filing No. 41-14.] A scope performed on April 27, 2016 revealed a tumor, [Filing No. 41-16], and a CT scan the following week revealed a tumor that had "increased in size since November 17, 2014." [Filing No. 41-17 at 2.]

On October 10, 2016, Courtney and Brian Webster filed suit for damages, arguing that "as a direct and proximate result" of Defendants' "substandard care, Courtney Webster's rectal cancer grew and spread, significantly reducing her chances of surviving the disease, significantly altering

her treatment options, and causing her severe pain, suffering and emotional distress," and depriving Brian Webster "of his wife's services, love, and companionship." [Filing No. 1 at 2.]

**B. Contractual Relationships Between Entities**

The identity and responsibility of various corporate actors is central to this case. As such, the Court will set forth in detail the corporate actors and their relationship to one another.

*1. Defendants Center for Diagnostic Imaging, Inc. and CDI Indiana, LLC*

The specific defendants in the Websters' suit are (1) Center for Diagnostic Imaging, Inc., doing business as both CDI and CDI Indianapolis, and (2) CDI Indiana, LLC, doing business as both CDI and CDI Indianapolis. [Filing No. 1.] Defendants deny that either does business as CDI Indianapolis. [Filing No. 27 at 1.]

However, it is undisputed that CDI Indiana, LLC is a wholly owned subsidiary of Center for Diagnostic Imaging, Inc., [Filing No. 41-19 at 1], and that as of July 2003, CDI Indiana, LLC operated under the name Center for Diagnostic Imaging, [Filing No. 42-2.]

*2. Contract between CDI Indiana, LLC & Medical Scanning Consultants, P.A.*

In or around October 2008, CDI Indiana, LLC entered into an Amended and Restated Management Services Agreement (the "Services Agreement") with a company called Medical Scanning Consultants, P.A. under which CDI Indiana, LLC arranged for Medical Scanning Consultants, P.A. to utilize the name "Center for Diagnostic Imaging" and all related marks and logos. [Filing No.at 41-20 at 7.] As between those parties and set forth in the Services Agreement, the two entities were independent contractors, [Filing No. 41-20 at 6], with Medical Scanning Consultants, P.A. owning and operating "a professional radiology medical practice with practice locations throughout the United States" at which it employed or otherwise retained physicians to provide "professional and technical radiology services." [Filing No. 41-20 at 5.] CDI Indiana,

LLC, on the other hand, was "in the business of owning certain assets of radiology practices and providing management, administrative and other non-medical radiological support services to radiology practices," including furnishing "facilities, equipment, non-physician personnel, supplies and non-physician support staff services." [Filing No. 41-20 at 5.] Pursuant to the Services Agreement, CDI Indiana, LLC agreed to provide certain management, administrative and billing services and equipment, space and personnel" for the day to day management of Medical Scanning Consultants, P.A.'s practice. [Filing No. 41-20 at 5.]

3. *Contract between Medical Scanning Consultants, P.A. & Imaging Consultants of Indiana, P.C.*

On January 1, 2011, Medical Scanning Consultants, P.A. entered into an Independent Contractor Agreement (the "Contractor Agreement") with Imaging Consultants of Indiana, P.C., "an independent radiology practice . . . that employs or contracts with radiologists licensed to practice medicine." [Filing No. 41-19 at 5.] Pursuant to the terms of the Contractor Agreement, Imaging Consultants of Indiana, P.C., agreed to provide professional radiology interpretation services to Medical Scanning Consultants, P.A.[2] [Filing No. 41-19 at 5.]

---

[2] Defendants contend that "Dr. Walker was an employee of Imaging Consultants of Indiana, P.C." [Filing No. 40 at 10 (citing "Exhibit S, including Imaging Consultants of Indiana, P.C., agreement; Exhibit T, Center for Diagnostic Imaging, Inc.'s answers to Plaintiff's Interrogatories, response No. 2")]. However, the exhibits Defendants cite in support of this statement do not, in fact, contain any such evidence. In making the aforementioned statement Defendants did not comply with Local Rule 56-1(e) (requiring a party to "support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence") and the statement is, therefore, not considered for the purposes of this Motion. Even if, however, the Court did consider this statement, it would not change the outcome of the Court's decision on summary judgment.

## III.

### DISCUSSION

**A.  Defendant's Motion for Leave to File a Short Rebuttal [Filing No. 47]**

After the parties' Motions for Summary Judgment were fully briefed, Defendants filed a Motion for Leave to File a Short Rebuttal to Plaintiffs' Reply Brief in Support of Summary Judgment.  [Filing No. 47.]  The crux of Defendants' Motion is that they dispute a statement in Plaintiffs' Reply brief in which Plaintiffs assert that CDI Indiana, LLC employs personnel who provide "medical functions."  [Filing No. 47 at 1.]  Defendants state that the Websters "have designated no evidence showing that either Defendant provided medical care to patients . . . ." [Filing No. 47-1 at 3.]  In response, the Websters filed an objection to Defendants' Motion, in which they contend that Defendants' position is not that the Websters failed to cite to materials in the record in support of their asserted fact as required by Rule 56(c), but that Defendants "disagree that the evidence cited by the Websters stands for the assertion made by them."  [Filing No. 48 at 2.]

Local Rule 56(d) contemplates circumstances in which a party opposing Summary Judgment may file a surreply following the movant's reply brief.  It provides that a party opposing a summary judgment motion may file a surreply brief "only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response."  Defendants' Motion to File a Rebuttal fails to allege that the Websters' Reply brief cites new evidence or objects to the admissibility of evidence.  Defendants Motion falls outside of the purview of Local Rule 56(d) and is, therefore, **DENIED**. [3]

---

[3] The Court notes that even if it were to consider the substance of Defendants' proposed Rebuttal [Filing No. 47-1], it would not change the outcome of the Court's decision on the two Motions for Summary Judgment.

**B. The Parties' Cross Motions for Summary Judgment [Filing No. 39; Filing No. 43]**

After Defendants filed a Motion for Summary Judgment, [Filing No. 39], Courtney and Brian Webster filed a Motion for Partial Summary Judgment on the issue of Defendants' liability for medical care provided to Courtney Webster at the facility where she received care, [Filing No. 43]. Each of the aforementioned motions is now ripe for the Court's consideration.

In their Motion for Summary Judgment, Defendants argue the Websters' claims fail as a matter of law because of the "absence of evidence that either Dr. Walker or Medical Scanning Consultants, P.A., was an actual or apparent agent of either Defendant." [Filing No. 39 at 2.] In particular, Defendants argue that Dr. Walker was not their apparent agent under the Indiana Supreme Court's "distinctively-tailored version of the theory of apparent agency" set forth in *Sword v. NKC Hospitals*, 714 N.E.2d 142 (Ind. 1999). Defendants explain that under *Sword*, "a hospital patient's reliance on the apparent agency of caregivers in the hospital setting is presumed unless the hospital – the principal – has provided the patient with notice that care may be provided by independent contractors outside of the hospital's control." [Filing No. 40 at 22.] However, Defendants argue that *Sword* is inapplicable to this case because "the Indiana Supreme Court specifically and expressly limited its holding to 'the specific context of a hospital setting.'" [Filing No. 40 at 19 (quoting *Sword*, 714 N.E.2d at 152).] Moreover, Defendants contend that the Indiana Supreme Court's decision was motivated by concerns that are specific to hospitals, namely that a hospital is a "unique institution" where "a large range of medical services is offered," which is "effectively imposed on patients without a genuine consideration and selection of alternative providers" and where a patient "has no reason to know whether any particular medical provider at the hospital is 'on staff' or is a contract provider." [Filing No. 40 at 23.] These considerations, Defendants argue, simply do not apply in this case because they are "management services

10

companies," not hospitals. [Filing No. 40 at 24.] In addition, Defendants argue that "this Court should not expand the scope of state law beyond its current bounds." [Filing No. 40 at 25.] Defendants argue that even if *Sword* applies, the notice that was given to Ms. Webster in the form of her electronic patient registration form and notice of privacy policies form constitutes "meaningful written notice" that her provider was an entity other than Defendants. [Filing No. 40 at 26.]

In response, the Websters filed a Motion for Partial Summary Judgment on the issue of Defendants' liability. [Filing No. 43.] In support of their motion and in opposition to Defendants' motion, the Websters allege that their claims are premised on *Sword* and its progeny. [Filing No. 44 at 5.] The Websters point to *Helms v. Rudicel*, 986 N.E.2d 302 (Ind. Ct. App. 2013), *trans. den.*, 993 N.E.2d 1149 (Ind. 2013), an Indiana Court of Appeals case that they argue applied *Sword* outside of a hospital setting in the context of care provided at a clinic. [Filing No. 44 at 9.] In addition, the Websters set forth cases from other jurisdictions that have embraced apparent agency in the context of HMOs, and dental practices. [Filing No. 44 at 10-13.] The Websters contend that if the Court decides that *Sword* applies to this case, "[a]s a matter of law, Dr. Walker was an apparent agent" of Defendants and, therefore, they are liable for his negligence. [Filing No. 44 at 15.] They further argue that Defendants held themselves out as the providers of Ms. Webster's imaging services due to signage at the facility, names and logos on the various forms she filled out, information on a website (regardless of whether Ms. Webster visited the site), a lack of written notice regarding who would be reading her scans, and a lack of meaningful notice that Defendants were not providing her with care. [Filing No. 44 at 15-22.]

In reply, Defendants state that "there is no basis for finding that Dr. Walker was Defendants' ostensible or apparent agent **unless** the Court treats Defendants as if they are hospitals,

and applies the *Sword* doctrine to them." [Filing No. 45 at 2 (emphasis in original).] However, they dispute that the authority cited by the Websters supports an extension of *Sword*. For example, Defendants argue that *Helms* imposed vicarious liability on a hospital and did not, therefore, extend *Sword* as the Websters contend. [Filing No. 45 at 3.] Defendants further contend that "the facts and circumstances involved in the extrajurisdictional cases cited by [the Websters] are dramatically different from the facts before the Court in this case, and do not even rise to the level of persuasive authority on the issue of whether this Court should apply *Sword*'s alternative theory of ostensible or apparent authority here." [Filing No. 45 at 4.] Defendants reiterate their argument that it is not "appropriate" for this Court to extend *Sword* "to the markedly different set of facts and circumstances presented in this case." [Filing No. 45 at 4.] Finally, Defendants contend that, even under the *Sword* analysis, they are nonetheless entitled to judgment as a matter of law because the information on the forms that Ms. Webster filled out at the clinic constitute adequate notice under *Sword* and "should have given rise to a reasonable inference on [Ms.] Webster's part that her care would be provided by" an entity other than Defendants. [Filing No. 45 at 19-20.]

In their reply brief in support of their Partial Motion for Summary Judgment, the Websters point out that Defendants do not dispute that they each do business as CDI. [Filing No. 46 at 2.] In addition, the Websters contend that the reasons articulated by various courts in finding hospitals liable under apparent agency are equally applicable to Defendants because: (1) "[l]ike a hospital patient showing up at an emergency room, [Ms.] Webster had absolutely no say in who the radiologist would be," (2) Defendants profited from the care provided by its undisclosed independent contractors just as a hospital does; and (3) like a hospital, Defendants profited from the care provided by undisclosed independent contractors. [Filing No. 46 at 5-8.] In short, the Websters argue that Ms. Webster "received care at a facility that is analogous to a hospital in

virtually every significant way." [Filing No. 46 at 14.] As such, they urge the Court to apply *Sword* to this case. And if the Court applies *Sword*, the Websters contend that the forms Ms. Webster filled out "do not provide the information plainly required by *Sword*." [Filing No. 46 at 15.]

1. *This Court's Task in Applying Indiana Law*

Sitting in diversity jurisdiction, this Court's duty "is to decide issues of Indiana state law" by predicting how "the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). As such, this Court must "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Golden v. State Farm Mut. Auto. Ins. Co.*, 745 F.3d 252, 255 (7th Cir. 2014) (citations omitted).

Defendants state that they "respectfully submit that it is the role of this Court to follow the law as established by the Indiana Supreme Court." [Filing No. 40 at 13.] However, this argument ignores the additional steps that the Seventh Circuit instructs federal court sitting in diversity to take. For example, if the state supreme court has not spoken on a particular issue, then the Seventh Circuit instructs that decisions of the intermediate appellate court will control "unless there are persuasive indications that the state supreme court would decide the issue differently." *BMD Contractors, Inc. v. Fid. & Deposit Co. of Maryland*, 679 F.3d 643, 648 (7th Cir. 2012), as amended (July 13, 2012) (citations omitted). In addition, "if there are no directly applicable state decisions at all," then the Court may consult "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data that might be persuasive on the question of how the Indiana Supreme Court would likely rule." *Id.* (quotations omitted).

Defendants correctly point out that the Seventh Circuit has stated that "federal courts are not the best place to turn for novel applications of state law," and that "those looking for innovations would be better advised to bring their claims in the state courts." *Freeman v. Mayer*, 95 F.3d 569, 574 (7th Cir. 1996). However, this advice is exactly that – advice, or as the Seventh Circuit has termed it, a "reminder" to litigants. *Estate of Moreland v. Dieter*, 576 F.3d 691, 700 (7th Cir. 2009). It is not a limitation on this Court's authority. Accordingly, the Court will turn to the merits of the parties' arguments, mindful of the Seventh Circuit authority that guides district courts as to how to make the best prediction of how the Indiana Supreme Court would decide the case.

2. *Whether Sword Applies to this Case*

All parties agree that in order to rule on the pending Motions for Summary Judgment, this Court must contend with *Sword v. NKC Hospitals, Inc.* – a 1999 case in which the Indiana Supreme Court faced the question of whether a hospital "could be held liable for the alleged negligence of its independent contractor physician." 714 N.E.2d at 144. The plaintiff in *Sword* alleged injuries as a result of a negligent epidural placement performed by a doctor who was an independent contractor. *Id.* at 145-46. Her claim presented "no allegations of direct corporate negligence, that is, that the hospital itself was negligent." *Id.* at 147. Instead, the court sought to determine whether a theory existed by which a court could find the hospital liable under a theory of vicarious liability. *Id.* After reviewing basic tort and agency concepts, as well as jurisprudence in Indiana and other jurisdictions, the court identified two factors that other courts considered in determining whether to hold a hospital liable for the acts of an independent contractor: (1) the hospital's manifestations, meaning whether the hospital "acted in a manner which would lead a reasonable person to conclude that the individual who was alleged to be negligent" was the hospital's employee or

agent; and (2) the patient's reliance, meaning whether "the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." *Id.* at 151 (citations omitted).

The *Sword* court ultimately adopted, "in the specific context of a hospital setting," the formulation of apparent or ostensible agency set forth in the Restatement (Second) of Torts section 429. *Id.* at 152. This requires a trier of fact in Indiana to focus on "the reasonableness of the patient's belief that the hospital or its employees were rendering health care." *Id.* *Sword* instructs that this is a "totality of the circumstances" determination, which includes looking at the "actions or inactions of the hospital, as well as any special knowledge the patient may have about the hospital's arrangements with its physicians." *Id.* In the context of a non-medical emergency, the Court enunciated the following rule:

> a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital.

*Id.*

Defendants expend a great deal of energy pointing out that *Sword* expressly applies only in the hospital setting, to the point of highlighting portions of the opinion that use the word "hospital." Indeed, the Indiana Supreme Court explicitly limited its holding to "the specific context of a hospital setting." But the *Sword* court rightly observed that the law erodes and evolves over time. *Id.* at 149-50 (noting that the holding of a prior Indiana Supreme Court case "has eroded over time," and setting forth a summary of the "Evolving Law in Other Jurisdictions"). Just as *Sword* overturned a rule that Indiana courts had "long followed," the Indiana Supreme Court could choose to apply the *Sword* test to contexts outside of a hospital setting.

This is particularly true given the evolving nature of the provision of health care, and the reduced reliance on the hospital setting as the location where health care is provided. In 2004, five years after *Sword*, the Federal Trade Commission and the Antitrust Division of the Department of Justice issued a report finding that "[t]he percentage of total health care spending devoted to outpatient care is growing" while the percentage of total healthcare spending by Americans on inpatient hospital care had "declined substantially over the past twenty years." Improving Health Care: A Dose of Competition: A Report by the Federal Trade Commission and the Department of Justice (2004). By 2014, this trend had continued, sparked, in part, by the passage of the Patient Protection and Affordable Care Act, with credit rating agency Fitch Ratings observing a "transition in healthcare delivery from a volume-based hospital-centric model to a value-based patient focused model" including "the outpatient/ambulatory setting." Utilization Metrics Review (Aug. 15, 2014) available at http://www.hfma.org/DownloadAsset.aspx?id=25424 (last accessed August 30, 2017). Similarly, observers predict a "significant shift" of health-system resources from inpatient to ambulatory care between 2016 and 2020. Bruce E. Beans, Experts Foresee a Major Shift From Inpatient to Ambulatory Care (Apr. 2016) available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4811253/# (last accessed August 30, 2017). Particularly in light of these shifts, this Court is not bound by the contextual limitation set forth in *Sword* in 1999 in predicting what the Indiana Supreme Court would do in this case some 18 years later.

Instead, it is imperative to examine what led the Indiana Supreme Court to adopt the rule set forth in *Sword* and, on this point, the court did not explicitly identify any one factor or series of factors. The clearest indication of the Court's rationale is its statement immediately before

expressly adopting the rule set forth in the Restatement (Second) of Torts section 429 – "[w]e agree with the conclusion of the Court of Appeals." *Id.* at 152.

The Indiana Court of Appeals identified the same two factors that the Indiana Supreme Court highlighted from other jurisdictions – the hospital's manifestations and the patient's reliance. "Under the nature of health care services today," the Court of Appeals wrote, "it is entirely possible for a reasonable, prudent person to conclude from representations made by hospitals that the doctors and health care professionals that service patients within the hospital's facilities are agents or servants of the hospitals." *Sword v. NKC Hosps., Inc.*, 661 N.E.2d 10, 14 (Ind. Ct. App. 1996).

There are, as Defendants point out, numerous differences between a hospital and the center where Ms. Webster received her scan. But there is no meaningful difference between the institutions in light of the *Sword* factors – a medical center's manifestations and a patient's reliance. Indeed, the statement made by the Indiana Court of Appeals in support of its conclusion is equally true of the center at issue in this case. Given the nature of health care services today, it is entirely possible for a reasonable, prudent patient to conclude from representations made by a medical center that the doctors and health care professionals that service patients within the center's facilities are agents or servants of the center.

Defendants' three contentions as to why the clinic is distinguishable from a hospital are each unavailing in light of the *Sword* factors. First, they argue that the *Sword* rule is inapplicable because Ms. Webster was not seeking a "broad scope of medical treatment." But as Ms. Webster's case illustrates, even treatment that falls within a narrow scope can have catastrophic, life altering consequences to a patient. Moreover, a reasonably prudent patient may arguably rely upon a center's representation that a doctor is the center's agent, regardless of the breadth of treatment the patient received. Second, Defendants contend that the relationship between a hospital and its

medical staff is distinct from the relationship between and among the various business entities involved in this case. However, *Sword* is not concerned with the various corporate formalities underlying a physician's employment situation. It is concerned with what a patient reasonably believes because of specific representations that have been made. If anything, the complicated web of interrelated entities in this case that Defendants describe illustrates the paramount importance of the *Sword* factors in an increasingly complicated and opaque medical environment. Finally, Defendants contend this case is different and distinct from *Sword* because Ms. Webster did not actually visit the CDI website. However, *Sword* itself addressed this argument, holding that where meaningful notice has not been given, and the patient has no special knowledge regarding physicians' employment arrangements, and there is no reason that the patient should have known of these employment relationships, "then reliance is presumed." *Sword*, 714 N.E.2d at 152.

In short, the Court has found no reason why the concerns underlying *Sword* do not apply equally to the medical center at issue in this case. Just as the Indiana Court of Appeals noted with regard to hospitals, it is entirely possible for a reasonable, prudent person to conclude from representations made by a medical center that the doctors and health care professionals that service patients within the center's facilities are agents or servants of the center. Accordingly, this Court is persuaded that the Indiana Supreme Court would adopt the *Sword* rule in this case. Therefore, the Court holds that under the doctrine of apparent agency, a medical center will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the medical center.

### 3. *Applying Sword to this Case*

Having determined that *Sword* applies to the case at hand, the Court now turns to examining the facts of this case in light of the two factors the Indiana Supreme Court highlighted in *Sword* – a medical center's manifestations and a patient's reliance. This requires an inquiry as to (1) whether the center acted in a manner which would lead a reasonable person to conclude that Dr. Walker was the center's employee or agent and (2) whether Ms. Webster acted in reliance upon the conduct of the center or its agent, consistent with ordinary care and prudence. As explained in *Sword*, this must be a "totality of the circumstances" determination, which includes looking at the actions or inactions of the clinic, as well as any special knowledge that Ms. Webster may have about the clinic's arrangements with its physicians.

Notably, the rule in *Sword* does not require an extensive examination of the contractual relationships underlying a physician's employment situation but, rather, focuses on the medical center's manifestations and a patient's reliance. This is important because the facts in this case present a complicated overlap of contractual relationships that is distinguishable from *Sword*'s relatively straightforward relationship between a hospital and its independent contractor physician. As set forth in Part II, Ms. Webster encountered representations from the center that listed no less than six entities in the days surrounding her CT scan, and the particular role of each entity is set forth in numerous contractual provisions. But the rule adopted in this case is concerned, not with the reality of contractual relationships, but with the reasonable perception of a patient, based on manifestations from her medical provider.

Applying *Sword* here reveals that there are genuine issues of material fact in dispute as to whether Dr. Walker was an apparent or ostensible agent of the center and whether Defendants may

be held liable for any of Dr. Walker's asserted negligent acts.[4]  It is for a jury to decide whether the Websters' belief that the center was providing Ms. Webster with medical care was reasonable by determining, for example, whether the center did anything to put them on notice that Dr. Walker was an independent contractor who was responsible for Ms. Webster's medical care, and whether Ms. Webster had any special knowledge of the center's employment arrangement.  In addition, it is for a jury to decide whether the center held itself out as a provider of medical care or gave adequate notice to Ms. Webster that it was not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the center.  Resolution of these questions, under a total of circumstances standard cannot be determined as a matter of law in ruling on summary judgment.

Because there are genuine issues of material fact as to whether Dr. Walker is an apparent agent of the center such that Defendants are liable for Dr. Walker's negligence, both Defendants' Motion for Summary Judgment, [Filing No. 39], and the Websters' Motion for Partial Summary Judgment, [Filing No. 43], are **DENIED**.

## IV.
### CONCLUSION

*Sword v. NKC Hospitals*, 714 N.E.2d 142 (Ind. 1999) applies to the facts of this case.  It is now for a jury to decide whether, consistent with the *Sword* factors, Defendants acted in a manner which would lead a reasonable person to conclude that Dr. Walker was Defendants' employee or

---

[4] Indeed, the genuine issues of material fact that the Indiana Supreme Court found in *Sword* mirror those found in this case.  *See Sword*, 714 N.E.2d at 152–53 (finding genuine issues of material fact: (1) because there was nothing in the record indicating that the hospital did "anything to put plaintiff on notice that it was her physician, an independent contractor, who was responsible for her medical care"; (2) because the plaintiff did not select her own doctor prior to admission and it was not apparent "if she had any special knowledge of the hospital's employment arrangement;" and (3) because of how the hospital "held itself out, through an extensive advertising campaign.").

agent, and whether Ms. Webster acted in reliance upon the conduct of Defendants or their agent, consistent with ordinary care and prudence.

For the reasons set forth herein, Defendants' Motion for Summary Judgment, [Filing No. 39], and the Websters' Motion for Partial Summary Judgment, [Filing No. 43], are **DENIED**. In addition, Defendants' Motion for Leave to File a Short Rebuttal, [Filing No. 47], falls outside of the purview of Local Rule 56(d) and is **DENIED**.

As a final matter, the Court requests that the Magistrate Judge set a settlement conference with the parties at her earliest convenience.


Date: 8/31/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana


Distribution:

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Jerry Avan Garau
GARAU GERMANO, PC
jgarau@g-glawfirm.com

Barbara J. Germano
GARAU GERMANO, P.C.
bgermano@g-glawfirm.com

J. Richard Moore
BLEEKE DILLON CRANDALL
richard@bleekedilloncrandall.com