COURTNEY WEBSTER,                    )
BRIAN WEBSTER,                       )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )          No. 1:16-cv-02677-JMS-DML
                                     )
CDI INDIANA, LLC,                    )
                                     )
                Defendant.           )

## ORDER

On Friday June 15, 2018, a jury returned a verdict for Plaintiffs Courtney and Brian Webster after finding that Defendant CDI Indiana, LLC ("CDI") was legally responsible for the conduct of a radiologist who negligently reviewed a CT examination performed on Ms. Webster, resulting in a missed diagnosis of recurrent, terminal rectal cancer. [Filing No. 167; Filing No. 166-1 at 17.] The jury awarded Ms. Webster $14,000,000 and Mr. Webster $1,000,000. [Filing No. 167.] Presently pending before this Court are two motions filed contemporaneously by CDI that each seek to undo the jury's verdict: a Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e), [Filing No. 184], and a Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b), or, alternatively, for a New Trial or Remittitur pursuant to Federal Rule of Civil Procedure 59(a), [Filing No. 182].

Although CDI's pending Motions cover a wide range of arguments, their Motions primarily take issue with this Court's decision to apply the Indiana Supreme Court's decision in *Sword v. NKC Hospitals*, 714 N.E.2d 142 (Ind. 1999) to this case. In response, the Websters address CDI's various arguments, but contend throughout that CDI could have taken simple steps to avoid or significantly limit its liability by either providing notice to Ms. Webster that the radiologist who

1

would review her CT examination was an independent contractor who was not subject to CDI's control, or by becoming a qualified health care provider under Indiana's Medical Malpractice Act.

In the pages that follow, the Court will follow CDI's arguments down many winding paths, but the Court continues to reject CDI's arguments concerning *Sword*. As for the jury's verdict, the Websters' point that CDI could have taken fairly simple steps to limit or eliminate its liability is well taken. The jury in this matter found that CDI had failed to give meaningful notice to Ms. Webster that it was not the provider of radiology services before the treatment, and that the services were being provided by a physician who was an independent contractor and not subject to the control and supervision of CDI. In addition, despite a complex corporate arrangement which CDI's own representative admitted was "Byzantine," [Filing No. 126 at 29], the jury determined that Ms. Webster reasonably believed that that the radiology services were being rendered by CDI or its employee. The Court finds no reason to vacate or alter the jury's determination in this matter and, for the reasons set forth herein, CDI's pending Motions, [Filing No. 182; Filing No. 184], are **DENIED**.

# I.
## BACKGROUND

### A. Factual Background

The background of this case was set forth in a jury instruction to which neither party objected. It provides, in relevant part, as follows:

> The case arises out of a radiologist's review and report of a CT examination performed on Courtney Webster at CDI's Carmel [Indiana] location on November 17, 2014.
>
> The Websters claim that CDI is responsible for the conduct of Dr. [Michael] Walker, the radiologist who read Ms. Webster's CT scan on that date, because he was acting as an apparent agent of CDI. The Websters also claim that Dr. Walker was negligent in reviewing and reporting the CT scan. The Websters claim that as a result of Dr. Walker's negligence, Ms. Webster's recurrent rectal cancer went

undiagnosed for more than 17 months and spread to the point that the cancer was incurable. The Websters seek compensation for their injuries and losses. . . .

CDI denies that Dr. Walker was acting as its apparent agent, denies that Dr. Walker was negligent in his review of Ms. Webster's CT scan, and denies that Dr. Walker's conduct was a responsible cause of harm to the Websters. CDI is not required to disprove the Websters' claims.

[Filing No. 159-1 at 2.]

### B. Procedural Background

In order to properly frame CDI's Motions, a brief recitation of the procedural background of this case is helpful. On August 31, 2017, this Court denied CDI's Motion for Summary Judgment, and the Websters' Motion for Partial Summary Judgment. [Filing No. 50.] In the Summary Judgment Order, the Court found that *Sword v. NKC Hospitals*, 714 N.E.2d 142 (Ind. 1999) applies to the facts of this case. The Court explained that *Sword* was "a 1999 case in which the Indiana Supreme Court faced the question of whether a hospital 'could be held liable for the alleged negligence of its independent contractor physician.'" [Filing No. 50 at 14 (quoting 714 N.E.2d at 144).] This Court went on to explain that Indiana's highest court ultimately adopted the formulation of apparent or ostensible agency set forth in the Restatement (Second) of Torts Section 429. [Filing No. 50 at 15 (quoting 714 N.E.2d at 152).] This Court "found no reason why the concerns underlying *Sword* do not apply equally to the medical center at issue in this case," [Filing No. 50 at 18], and found that there were genuine issues of material fact as to whether Dr. Walker was an apparent agent of CDI such that CDI is liable for Dr. Walker's negligence, [Filing No. 50 at 20].

Following the Court's denial of summary judgment, CDI requested an interlocutory appeal on the question of whether *Sword* applies to this case, [Filing No. 52], which the Court denied,

finding that CDI had failed to satisfy the criteria for such an appeal pursuant to 28 U.S.C. § 1292(b), [Filing No. 61].

On February 1, 2018, the Court denied CDI's Motion to Bifurcate Trial, finding that bifurcation was unnecessary and inappropriate and would unfairly prejudice the Websters. [Filing No. 78 at 5.]

In advance of trial, the Court considered a series of Motions,[1] including the Websters' Motion *in Limine* 6, which sought to exclude "[a]ny testimony or evidence that the Websters have a companion case pending against Dr. Walker and Medical Scanning Consultants, Inc. at the Indiana Department of Insurance." [Filing No. 104 at 1-2.] The Court granted the Motion, finding "that evidence concerning the state-court case against Dr. Walker is not relevant and could confuse the jury," but also finding "that some instruction is appropriate to prevent the jury from speculating about why Dr. Walker is not a party to the lawsuit."[2] [Filing No. 150 at 4-5.]

The trial in this matter took place from June 11 to June 15, 2018. [Filing No. 159; Filing No. 166.] On the third day of trial, CDI moved for a judgment as a matter of law pursuant to

---

[1] Several of the Motions the Court ruled upon in the month prior to trial do not appear to be at issue in CDI's pending Motions. First, the court granted two Motions to Exclude the Testimony of CDI's designated expert witnesses and denied a Motion to Exclude the Testimony of a third. [Filing No. 135.] Next, at the final pre-trial conference in this matter, the Court ruled on numerous objections and Motions *in Limine*. [Filing No. 139.] The Court subsequently ruled upon matters it had taken under advisement at the final pre-trial conference. [Filing No. 150.] The Court then ruled on fourteen categories of objections to Defendant's proposed exhibits. [Filing No. 151.] Lastly, the Court denied a Motion for Reconsideration concerning one of its orders involving CDI's expert witness. [Filing No. 158.]

[2] At the close of trial, the Court instructed the jury as follows:

> Dr. Walker is not a defendant in this case. You should decide this case only as to the named defendant in this case, CDI Indiana, LLC. You should not consider any claims that the Websters may have against Dr. Walker, nor speculate as to why any claims are not raised in this action.

[Filing No. 166-1 at 18.]

Federal Rule of Civil Procedure 50, arguing that the Websters had not demonstrated a relationship between a contractor and an independent contractor as required by Restatement Section 429. [Filing No. 178 at 3-5.] The Court rejected this argument, and found that "looking at the *Sword* language itself . . . a trier of fact must focus on the reasonableness of the patient's belief that the hospital – or in this case, CDI or its employees – were rendering healthcare" and concluded that the relationship between the corporate entities is not "determinative" of the patient's belief "in any way." [Filing No. 178 at 6.]

The next day, CDI made an offer of proof regarding the Websters' Motion *in Limine* 6, arguing that, but for the Motion, "Dr. Walker would testify that he and Medical Scanning Consultants, P.A., have been sued by the Websters in a medical malpractice action pending before the Department of Insurance." [Filing No. 179 at 3-4.] CDI argued that such evidence would prove the "nature of the agency relationship . . . that exists between Medical Scanning Consultants, P.A., and Dr. Walker" and the Websters' "knowledge of that fact . . . ." [Filing No. 179 at 5.] The Court stood on its earlier ruling, noting that "knowledge has to be based on notice provided to [Ms.] Webster before the treatment" so her subsequent suit against Dr. Walker and Medical Scanning Consultants, P.A., does not "tend[] to prove" Ms. Webster's knowledge prior to treatment. [Filing No. 179 at 5-6.] Moreover, the Court found that evidence of the relationship between Medical Scanning Consultants, P.A., and Dr. Walker was "already in evidence." [Filing No. 179 at 5-6.]

CDI also moved for judgment as a matter of law at the close of all evidence, arguing that CDI was not a provider of medical care, and that Restatement 429 requires an independent contractor relationship with a doctor, which was not present in this case. [Filing No. 180 at 11-12.] After questioning with skepticism CDI's argument that it could not provide medical care,

the Court denied CDI's Motion, finding that the jury had to decide whether CDI held itself out by offering to provide radiology services and whether Ms. Webster accepted such services in the reasonable belief that the radiology services were being provided by CDI or its employee. [Filing No. 180 at 13-14.] The Court also highlighted the dispositive importance of the patient's reasonable belief that the services are being rendered by the employer or by his servants, noting that *Sword* adopted Restatement 429, which focuses on this belief, rather than Restatement 267, which focuses on representations of the provider of care. [Filing No. 180 at 15.]

On June 15, 2018, the fifth and final day of trial, the jury returned its verdict. [Filing No. 166.] On Verdict Form #1, the jury found that CDI "IS legally responsible for the conduct of the radiologist, Dr. Walker." [Filing No. 167 at 1.] On Verdict Form #2, the jury found as follows:

We, the jury, find for the plaintiffs, Courtney Webster and Brian Webster, and against the defendant, CDI Indiana, LLC. We find that the Websters' damages are:

Courtney Webster    $ 14,000,000.00

Brian Webster    $ 1,000,000.00

[Filing No. 167 at 2.]

The same day, the Court entered final judgment in favor of the Websters pursuant to Federal Rule of Civil Procedure 58, consistent with the jury's verdict. [Filing No. 169.]

On July 13, 2018, CDI filed a Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b), or, alternatively, for a New Trial or Remittitur pursuant to Fed. R. Civ. P. 59(a), [Filing No. 182], and a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e), [Filing No. 184]. Both Motions are fully briefed and ripe for this Court's review.

## II.
### STANDARD OF REVIEW

**A.  Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b)**

Under Federal Rule of Civil Procedure 50, a court may grant judgment as a matter of law where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).  "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).  Upon a timely-filed renewed motion for judgment as a matter of law "the court may:  (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Id.

In considering a Rule 50(b) motion, a court must "construe the trial evidence strictly in favor of the party who prevailed before the jury." *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 644 (7th Cir. 2018) (quotations omitted).  In short, a court's task "is to decide whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *Id.*  In so doing, the "court does not make credibility determinations or weigh the evidence." *Passananti v. Cook Cty.*, 689 F.3d 655, 659 (7th Cir. 2012).

**B.  Motion for a New Trial or Remittitur pursuant to Fed. R. Civ. P. 59(a)**

"The court may, on motion, grant a new trial on all or some of the issues" after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014) (citing *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012)).

In considering a request for remittitur, a district court must grant "proper deference to the jury's verdict and limit[] its inquiry to three questions: whether the award is monstrously excessive; whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas[;] and whether the award is roughly comparable to awards made in similar cases." *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006) (internal quotations omitted).

### C. Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e)

A "district court possesses the power . . . to alter or amend a judgment after its entry" pursuant to Federal Rule of Civil Procedure 59(e). Fed. R. Civ. P. 59(e) 1946 Committee Notes. Relief under Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Childress v. Walker*, 787 F.3d 433, 442 (7th Cir. 2015) (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)). A Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010) (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000)). Nor may a party use Rule 59(e) to "rehash previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (internal quotation omitted). "Amendment of the judgment is proper only when 'the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact.'" *Stragapede v. City of Evanston, Illinois*, 865 F.3d 861, 868 (7th Cir. 2017) (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). A manifest error occurs "when the district court commits a

wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* at 868 (internal quotation omitted).

## III.
### DISCUSSION

The Court's task in analyzing CDI's pending Motions is complicated by the fact that they are duplicative and overlapping. For example, in each of the two Motions filed on July 13, 2018, CDI requests that the Court vacate the Judgment and enter judgment in its favor. [Filing No. 182 at 2; Filing No. 184 at 3.] CDI argues that this can be done pursuant to Rule 59(e) by either altering or amending the Court's prior Summary Judgment Order and June 15, 2018 Judgment to enter judgment in favor of CDI, [Filing No. 184], or pursuant to Rule 50(b) by entering judgment as a matter of law in CDI's favor, [Filing No. 182]. CDI also presents alternative remedies that are distinct, but overlapping. In its Motion to Alter or Amend Judgment, CDI requests an alternative remedy wherein the Court remits "the jury's $15,000,000.00 damage award to the $1,250,000.00 statutory damages cap of the Indiana Medical Malpractice Act." [Filing No. 184 at 2-3 (citing Ind. Code § 34-18-14-3).] In its Motion for Judgment as a Matter of Law pursuant to Rule 50(b), CDI requests an alternative remedy in the form of "a new trial pursuant to Fed. R. Civ. P. 59(a), or in the alternative, for remittitur of the damages awarded to the Websters in this case." [Filing No. 182 at 2.]

Notwithstanding the fact that CDI filed two separate Motions, the parties presented their arguments a single supporting briefs. [*See* Filing No. 183 (CDI's supporting brief); Filing No. 185 (the Websters' response brief).] The Court will follow suit, and considers the substance of the parties' arguments concerning both motions.

CDI makes three overarching arguments in support of its Motions: (1) that the Court erred in finding that the rule regarding apparent agency set forth in the Indiana Supreme Court's decision

in *Sword* applies to this case; (2) that CDI is entitled to judgment as a matter of law because it cannot be a "*Sword* defendant" under the Restatement (Second) of Torts § 429; and (3) that CDI is entitled to a new trial because of the Court's previous evidentiary rulings or, in the alternative, that CDI is entitled to remittitur because the jury award exceeded the cap set forth in the Indiana Medical Malpractice Act.  [Filing No. 183.]

### A.  The application of *Sword*  to this Case

CDI first argues that "the Court erred in making its '*Erie* guess' that the Indiana Supreme Court would extend *Sword* vicarious liability to the circumstances of this case."  [Filing No. 183 at 6.]

As a general matter, the Websters contend that CDI "forfeited" its argument that the Court erred in applying *Sword* to this case by failing to object to Final Instruction 20."[3]  [Filing No, 185 at 2.]  Although the Websters acknowledge that CDI objected to Final Instruction 21,[4] they contend

---

[3] Final Instruction No. 20 provides as follows:

> CDI Indiana, LLC is a limited liability company. An independent contractor is considered an apparent agent of a limited liability company when the independent contractor provides services to another person who accepts the services in the reasonable belief that the services are being rendered by the limited liability company or its employees. A limited liability company is legally responsible for physical harm caused by the negligence of an apparent agent in supplying such services, to the same extent as though the limited liability company or its employees were supplying the services.

[Filing No. 166-1 at 21.]

[4] Final Instruction 21 provides as follows:

> The Websters claim that Dr. Walker was the apparent agent of CDI Indiana, LLC, such that Courtney Webster reasonably believed that the radiology services were being rendered by CDI Indiana, LLC or its employee. In order for CDI Indiana, LLC to be legally responsible for the acts of Dr. Walker, the Websters must prove the following elements by the greater weight of the evidence:
> 1. CDI Indiana, LLC held itself out to the public by offering to provide radiology services;

that "[a] party's failure to object to a final instruction will not be saved by a party's objection to a 'similar' proposed instruction." [Filing No. 185 at 3.]

In response, CDI argues that a "closer review of the instruction conference transcript" reveals that CDI "maintained an objection to the incorporation of language from Final Instruction 20 into Final Instruction 21." [Filing No. 191 at 5.] Moreover, CDI argues that it has "maintained its argument regarding the inapplicability of *Sword* vicarious liability throughout its filings." [Filing No. 191 at 6.]

CDI's argument that *Sword* does not apply to the facts of this case is familiar to this Court, as CDI previously articulated it in its Motion for Summary Judgment, [Filing No. 39; Filing No.

---

2. Ms. Webster looked to CDI Indiana, LLC, rather than Dr. Walker, for care; in other words, that Courtney Webster did not choose Dr. Walker, but relied upon CDI Indiana, LLC to provide radiology services; and
3. Ms. Webster reasonably believed that that the radiology services were being rendered by the CDI Indiana, LLC or its employee.

With respect to element 1, you are further instructed that CDI Indiana, LLC will be considered to have held itself out as the provider of Ms. Webster's radiology services unless it gave meaningful notice to Ms. Webster that it was not the provider of those services before the treatment, and that the services were being provided by a physician who was an independent contractor and not subject to the control and supervision of CDI Indiana, LLC, and Ms. Webster acknowledged the notice before the treatment.

With respect to element 3, you are instructed that in determining the reasonableness of Ms. Webster's belief that the radiology services were being rendered by CDI Indiana, LLC or its employee, you must consider the totality of the circumstances, including the actions or inactions of CDI Indiana, LLC, as well as any special knowledge that Ms. Webster may have had about CDI Indiana, LLC's arrangements with Dr. Walker.

CDI Indiana, LLC is not legally responsible for Dr. Walker's conduct if it provided meaningful written notice to Ms. Webster that the radiologist who would be reviewing and reporting her CT scan was not a CDI Indiana, LLC employee, and if Ms. Webster acknowledged that notice before the treatment.

[Filing No. 166-1 at 22-23.]

40 at 19], its Motion for Amendment of Order, [Filing No. 52], its Motions for Judgment as a Matter of Law, [Filing No. 162; Filing No. 165], and now in its Rule 59(e) Motion to Alter or Amend Judgment, [Filing No. 184]. Throughout the trial in this matter, CDI repeatedly preserved its objection to *Sword*, including during the instructions conference. [Filing No. 180 at 5 (in which CDI's counsel stated that "I want to make sure that I preserve at the outset our belief that the *Sword* case and the elements set forth don't apply in this context"); Filing No. 180 at 21 (in which CDI's counsel objected to Final Instruction No. 21 "[w]ithout waiving an objection to *Sword*")]. Accordingly, the Court finds that CDI has not waived its general argument that *Sword* does not apply to this case.

However, just as it has at each stage of this litigation, the Court rejects CDI's argument that *Sword* does not apply to this case on substantive grounds. In so doing, the Court reiterates its earlier finding that it "has found no reason why the concerns underlying *Sword* do not apply equally to the medical center at issue in this case," and finds that, to the contrary, "the evolving nature of the provision of health care, and the reduced reliance on the hospital setting as the location where health care is provided" support a finding that *Sword* applies to this case. [*See* Filing No. 50 at 16-18.]

The Court has had many opportunities to review and reconsider *Sword* over the past fifteen months, as it has considered the parties' numerous motions and objections and worked to craft jury instructions. Although CDI may take issue with what it has termed this Court's "Erie guess,"[5] at

---

[5] Within this circuit, the phrase "Erie guess" has its origins in a 1992 law review article in which then-Chief Judge Dolores K. Sloviter of the Third Circuit Court of Appeals wrote of her concern about the impact of diversity jurisdiction on federalism principles. *See* Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 VA. L. REV. 1671, 1679 (1992) (noting that "the state courts have found fault with a not insignificant number of past 'Erie guesses' made by the Third Circuit and our district courts"). Judge Ripple cited Chief Judge Sloviter's phrase in a dissent, noting that the majority's interpretation of state law in that particular

no point, including here, has the Court been persuaded that *Sword* does not apply to the facts of this case.

The Court will consider each of CDI's myriad arguments more thoroughly below, but as a general matter, CDI's arguments regarding contractual arrangements and potential claims that the parties in this case have against other entities do not hold up when considered in light of *Sword*'s focus on the "reasonableness of the patient's belief." *Sword*, 714 N.E.2d at 152. Absent any allegation that the Websters had specialized knowledge of CDI's contractual relationship with Dr. Walker, such contractual arrangements have no bearing on the jury's analysis under *Sword*. The same is true of claims that the parties in this case may have against other entities. *Sword* instructed that a trier of fact must focus on the reasonableness of the patient's belief that the hospital or its employees were rendering health care, 714 N.E.2d at 152, and accordingly, this Court instructed the jury that it must focus on the reasonableness of Ms. Webster's belief that CDI was rendering

---

case was a "rather weak 'Erie guess.'" *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1416 (7th Cir. 1994).

Rather than characterize its prior decision as a mere "Erie guess," the Court views its "duty in this diversity suit" consistent with the Seventh Circuit's direction – "to decide issues of Indiana state law" by predicting how "the Indiana Supreme Court would decide them today," *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017), and "to take into account trends in a state's intermediate appellate decisions," but to nonetheless make "a prediction about the state's highest court," *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811-12 (7th Cir. 2018) (internal citations omitted). To the extent that CDI characterizes this Court's decision in the matter as an "Erie guess," the same could be said of the opinion of the Seventh Circuit of Appeals sought by CDI in its request for interlocutory appeal, as it too would be sitting in diversity jurisdiction. CDI's unsuccessful effort to seek interlocutory appeal in this matter suggests that it does not take issue with an "Erie guess," as such, but merely takes issue with the outcome of this Court's decision.

health care.[6]  The jury, having been duly instructed, returned a verdict in favor of the Websters and CDI has failed to meet its burden of showing that the verdict should be vacated.

The Court now considers CDI's augments regarding *Sword* in further detail.

### 1. Public Policy Arguments Regarding the Indiana Medical Malpractice Act

CDI contends "[a]s a matter of Indiana law and public policy, the Indiana Supreme Court would not extend *Sword* vicarious liability principles to non-health care providers . . . who are not subject to the Indiana Medical Malpractice Act because that would expose negligent health care providers such as Dr. Walker to common law implied indemnity claims in excess of the statutory $1,250,000.00 medical malpractice damages cap." [Filing No. 183 at 6-7.]

In response, the Websters point out that CDI has waived many of its arguments regarding *Sword*.  First, the Websters contend that CDI failed to include in its 50(a) Motion any argument that applying *Sword* to this case "contravenes Indiana public policy by making Dr. Walker liable to CDI under a common law indemnity theory for a sum greater than the Indiana Medical Malpractice Act's damages cap." [Filing No. 185 at 1-2.]  Similarly, the Websters contend that

---

[6] *Sword* provides that:

> a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. A hospital generally will be able to avoid liability by providing meaningful written notice to the patient, acknowledged at the time of admission.

714 N.E.2d at 152.  Final Instruction 21 tracks the language of *Sword* and provides, in relevant part, as follows:

> CDI Indiana, LLC will be considered to have held itself out as the provider of Ms. Webster's radiology services unless it gave meaningful notice to Ms. Webster that it was not the provider of those services before the treatment, and that the services were being provided by a physician who was an independent contractor and not subject to the control and supervision of CDI Indiana, LLC, and Ms. Webster acknowledged the notice before the treatment.

[Filing No. 166-1 at 22-23.]

CDI failed to include in its 50(a) Motion any argument that they "should not be allowed to recover $15,000,000 from CDI when they could only recover $250,000 from Dr. Walker." [Filing No. 185 at 2.]

In its reply brief, CDI contends that the arguments it raised "in support of its Post-Trial Motions are simply more 'elaborate' or 'nuanced' versions" of the same arguments it maintained throughout this case. [Filing No. 191 at 4.]

A "Rule 50(b) motion is only a renewal of the preverdict motion," and therefore "it can be granted only on grounds advanced in the preverdict motion." *Wallace v. McGlothan*, 606 F.3d 410, 418 (7th Cir. 2010) (citing Fed. R. Civ. P. 50(b); committee note (2006 amend.); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404-05 (2006)). "Thus, if a party raises a new argument in its Rule 50(b) motion that was not presented in the Rule 50(a) motion, the non-moving party can properly object." *Id.* at 418. Similarly, a Rule 59(e) motion "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Resnick*, 594 F.3d at 568 (internal quotation omitted).

As previously noted, CDI's general argument that *Sword* does not apply to the facts of this case is familiar to this Court. Here, however, CDI deviates from its prior arguments involving *Sword* and now proffers arguments for the first time that extending *Sword* to this case is counter to the public policy behind Indiana's Medical Malpractice Act. Despite the numerous motions and supporting briefs it filed in this case, including CDI's two Motions for Judgment as a Matter of Law filed during trial, CDI failed to make such arguments until after this Court had conducted a trial and entered final judgment against it.[7] As such, CDI has waived its argument that the Indiana

---

[7] Excluding its evidentiary briefs, CDI filed nearly 100 pages of briefs throughout the course of this litigation, yet at no point did CDI set forth its public policy arguments concerning the Indiana Medical Malpractice Act. [*See* Filing No. 40 (CDI's 29 page Brief in Support of Summary

Supreme Court would not extend *Sword* vicarious liability principles to non-health care providers who are not subject to the Indiana Medical Malpractice Act.

Even if CDI had not waived this argument, it is meritless. The Websters point out in their response brief that CDI is a health care provider under the Indiana Medical Malpractice Act and, therefore, CDI's argument that *Sword* should not be extended to a non-health care provider is "inapplicable to this case." [Filing No. 185 at 5.] To support this argument, the Websters point to the testimony of Medical Scanning Consultant's medical director, who testified "that CDI was responsible for every aspect of obtaining a patient's imaging study at CDI's Indiana locations, except for the interpretation of the study," including "obtaining patients' informed consent for imaging studies; injecting patients with contrast; observing patients to see if they had any reaction to contrast; making sure patients were positioned properly for imaging studies; and interpreting orders from referring physicians to make sure that the proper imaging study was performed." [Filing No. 185 at 5.] The Websters contend that the fact "[t]hat CDI chose not to avail itself of the protections afforded to health care providers by the Indiana Medical Malpractice Act does not change the fact that it was providing health care to patients." [Filing No. 185 at 6.]

In its reply brief, CDI argues that the Websters' "assertion that CDI Indiana was a 'health care provider' is based on services rendered by technicians and others, none of whom were alleged to be negligent in the rendering of any service to Mrs. Webster; therefore, the Websters' argument

---

Judgment); Filing No. 45 (CDI's 24 page Reply Brief in Support of Summary Judgment); Filing No. 52 (CDI's 12 page Motion for Interlocutory Appeal); Filing No. 73 (CDI's 12 page Motion to Bifurcate Trial); Filing No. 77 (CDI's 12 page Reply Brief in support of its Motion to Bifurcate Trial); Filing No. 162 (CDI's 3 page Motion for Judgment as a Matter of Law at the close of all evidence pursuant to Rule 50); Filing No. 165 (CDI's 3 page Motion for Judgment as a Matter of Law at the close of Plaintiffs' case pursuant to Rule 50).]

is based upon non-probative and non-material evidence which must be disregarded for the purpose of ruling on CDI Indiana's Rule 50(b) motion." [Filing No. 191 at 7.]

The Court rejects CDI's frivolous argument that it must disregard evidence that CDI was a health care provider. CDI itself proffered the argument that it was not a health care provider, and just as a "reply brief is for replying," *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987), a response brief is for responding. The Websters are permitted to respond to CDI's argument that it was not a health care provider, and the Court now considers the parties' arguments.

A helpful starting point in determining whether CDI is a health care provider is to observe that coverage under Indiana's Medical Malpractice Act is not mandatory for health care providers. *Spangler v. Bechtel*, 931 N.E.2d 387, 399 (Ind. Ct. App.), *opinion vacated on other grounds by* 940 N.E.2d 832 (Ind. 2010) (discussing the Act's inapplicability to a suit against a midwife who made an "election of non-coverage under the Medical Malpractice Act"). To the contrary, the Act provides that a "health care provider who fails to qualify under this article is not covered by this article and is subject to liability under the law without regard to this article." Ind. Code § 34-18-3-1. On this point, the Act has remained essentially unchanged since its passage in 1975. *See* Otis R. Bowen, *Medical Malpractice Law in Indiana*, 11 JOURNAL OF LEGISLATION 15, 18 n.36 (1984) (quoting Ind. Code § 16-9.5-1-5 (1976), which provided that a "health care provider who fails to qualify under the Act will be subject to liability under the law without regard to the provisions of the Act"). Therefore, the fact that CDI is not a qualified health care provider under the Act does not mean that it is not a health care provider or that it could not become a qualified health care provider under the Act. In other words, a health care provider who is eligible to become a qualified health care provider under the Act can make an election of non-coverage and decline to pay into

the Patient's Compensation Fund, thereby forgoing the protection of Act's statutory cap on damages.

Turning to the Act itself, as Judge Hamilton recently observed "[m]odern Indiana statutes" including the Medical Malpractice Act, "tend to be written so that a great deal of substantive law is placed in the statutory definitions." *Thompson v. Cope*, __ F. 3d __, 2018 WL 3849381, at *9 (7th Cir. Aug. 14, 2018). This is true of the Act's lengthy definition of a "health care provider," which consists of seven categories, beginning with "[a]n individual, a partnership, a limited liability company, a corporation, a professional corporation, a facility, or an institution licensed or legally authorized by this state to provide health care." Ind. Code § 34-18-2-14(1). The Act then defines health care as "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13.

Such circular definitions by themselves do little to aid the Court in its inquiry. But based on the trial testimony on this issue, there is sufficient evidence to conclude that CDI is a health care provider. As the Websters point out, Medical Scanning Consultant's medical director Michael Hostetter testified that CDI was "providing a medical service," but "not practicing medicine" and went on to testify that CDI was "providing medical services to the patient in terms of providing their scans, yes." [Filing No. 177 at 14.] CDI points to contradictory evidence in the form of testimony from Henri Minette, CDI's in-house counsel and assistant secretary, who testified that CDI is "not a professional entity. By law, it's not permitted to practice medicine. It does not practice medicine, does not employ physicians, does not provide medical services." [Filing No. 176 at 5.]

Whether and why the jury discounted the testimony of Mr. Minette and gave credence to the testimony of Dr. Hostetter is of no moment.[8]   The Court's inquiry is not whether any evidence in the record supports CDI's theory of the case.  Nor may the Court make credibility determinations or reweigh evidence.  *Passananti*, 689 F.3d at 659.  Instead, construing the trial evidence strictly in favor of the Websters as it must, *Thorne*, 882 F.3d at 644, the Court finds that there is sufficient evidence to conclude that CDI is a health care provider.

In sum, even if CDI had not waived the argument that the Indiana Supreme Court would not extend *Sword* vicarious liability principles to non-health care providers who are not subject to the Indiana Medical Malpractice Act, the Court finds that the argument is meritless because the trial testimony in this case – specifically the testimony of Dr. Hostetter – supports a finding that CDI is a health care provider.

### 2.  *CDI's Potential Indemnity Claim*

In continuing its argument that that the Indiana Supreme Court would not extend *Sword* vicarious liability to this case, CDI argues that it "will hold a right to common law indemnity against Dr. Walker for the $15,000,000.00 jury verdict and judgment" and that "Dr. Walker's indemnity obligation implicates the same public policy concerns underlying the Medical Malpractice Act's damages caps" by putting physicians in an untenable position and endangering access to health care.  [Filing No. 183 at 9-10.]  CDI contends that this would allow the Websters

---

[8] Of course the Court has no insight into the precise reasons the jury came to a different conclusion about CDI's liability than that which was advocated by CDI and Mr. Minette, CDI's corporate representative who sat at the defense table throughout the trial.  [Filing No. 176 at 3.]  Perhaps during the lengthy portions of the trial during which, from the Court's vantage point, Mr. Minette appeared to sleep at the defense table, the jury heard evidence that it found compelling or determinative.  Regardless, having concluded that "a highly charitable assessment of the evidence supports the jury's verdict," *Thorne*, 882 F.3d at 644, the Court will not look behind it.

to perform an "end run" around the Medical Malpractice Act's damages cap. [Filing No. 183 at 10.]

The Websters once again contend that CDI waived this argument by failing to include it in its Rule 50(a) Motion. [Filing No. 185 at 1-2.] In addition, the Websters argue that CDI's hypothetical indemnity claim "is irrelevant" because "the Indiana Court of Appeals . . . recognized the irrelevance of potential indemnity claims against the agent in determining the liability of the principal." [Filing No. 185 at 10.] Further, the Websters contend that "CDI's hypothetical claim for indemnity against Dr. Walker would be affected by [Indiana's Medical Malpractice] Act because Dr. Walker is a qualified provider." [Filing No. 185 at 11.] Lastly, the Websters claim that CDI's "decision to withhold notice" from Ms. Webster, and to "chose not to become a qualified health care provider under the Act" would "likely create insurmountable obstacles to CDI's hypothetical indemnity claim against Dr. Walker." [Filing No. 185 at 14.] The Websters argue that "CDI easily could have escaped any liability for the conduct of Dr. Walker by simply providing such notice to Mrs. Webster." [Filing No. 185 at 13.]

As to the Websters' latter point, CDI responds that its decision to withhold notice from Ms. Webster "was at issue at trial" only because of "the Court's denial of the parties' Cross-Motions for Summary Judgment . . . ." [Filing No. 191 at 13.] In addition, CDI responds that its indemnity claim against Dr. Walker would not be capped because "a physician-patient relationship is necessary for application of the Medical Malpractice Act" and that "a claim for indemnity is separate and distinct from the underlying liability." [Filing No. 191 at 15.]

The Court once again determines that CDI has waived its arguments related to the indemnity issue by failing to raise them previously. *See Wallace*, 606 F.3d at 418; *Resnick*, 594 F.3d at 568. Even if CDI had not waived such arguments, the Court finds that a potential indemnity

claim has no bearing on this case. *Sword* mentions nothing about indemnity, and CDI's arguments on this point wander far afield of the limited question of whether *Sword* should apply to this case.[9] As such the Court declines to address the substance of CDI's arguments related to indemnity.

### 3. *The Websters' Case before the Indiana Department of Insurance*

CDI's third point in arguing that the Indiana Supreme Court would not extend *Sword* vicarious liability to this case is that the Websters "are not without recourse" if judgment as a matter of law is entered in favor of CDI because they "have a viable medical malpractice complaint pending before the Indiana Department of Insurance against Dr. Walker and Medical Scanning Consultants, P.A." [Filing No. 183 at 10.] CDI argues that the Websters "should not be permitted to do something indirectly" that the Indiana Medical Malpractice Act prevents them from doing directly, and that "a non-negligent party who is only held liable through the 'legal fiction' of vicarious liability should not be required to pay greater damages than the one who is actually

---

[9] The Court will briefly address one such area where CDI's argument wanders far afield from the question at hand – its characterization of the Websters' argument regarding its failure to give notice to Ms. Webster. CDI quotes the Websters' argument that "CDI's liability to the Websters partially derives from the conduct of Dr. Walker, but it is also attributable to its own conduct in choosing not to provide notice to Mrs. Webster that her imaging study was going to be interpreted by someone other than CDI." [Filing No. 191 at 13 (quoting Filing No. 185 at 13).] CDI claims that "the Websters are now paradoxically claiming that CDI is directly liable to them because it could be held vicariously liable." [Filing No. 191 at 13.]

CDI's argument on this point is a mischaracterization of the Websters' argument. Far from contradicting their "entire theory of the case," as CDI contends, the Websters contend that CDI could have escaped liability under *Sword* by giving Ms. Webster adequate notice, and that this fact may limit its recovery in an indemnity case against Dr. Walker. As to the first contention, the Court agrees, as reflected in Final Instruction 21, which provides in relevant part: "CDI Indiana, LLC is not legally responsible for Dr. Walker's conduct if it provided meaningful written notice to Ms. Webster that the radiologist who would be reviewing and reporting her CT scan was not a CDI Indiana, LLC employee, and if Ms. Webster acknowledged that notice before the treatment." [Filing No. 166-1 at 23.] As to the Websters' second contention that this may limit CDI's indemnity case against Dr. Walker, the Court declines to address the argument and reiterates its finding that a potential indemnity claim has no bearing on this case.

negligent." [Filing No. 183 at 11.]   As a result of the foregoing, CDI argues that *Sword* liability should not apply to CDI and should either be limited to hospitals or "only extended to qualified health care providers protected by the Indiana Medical Malpractice Act's damages cap." [Filing No. 183 at 12.]

In their response brief, the Websters again contend that CDI has waived this argument. [Filing No. 185 at 2.]  The Websters further point out that "CDI never explains how the existence of a viable claim against non-parties to this action has any bearing on the validity of the Websters' claim against CDI in this action. The short answer is that it doesn't." [Filing No. 185 at 15.] Moreover, the Websters argue that CDI's arguments are an "attempt to avail itself of the protections of the Medical Malpractice Act" without having taken the steps necessary to gain that protection. [Filing No. 185 at 15.]

In response, CDI argues that "[r]ather than pursuing the individual who was actually at fault, the Websters chose to pursue a 'deep pocket' under a vicarious liability theory" but that "there is no statutory prohibition of the Websters' medical malpractice claim against Dr. Walker." [Filing No. 191 at 11.]

Here again, the Court finds that CDI has waived its arguments related to the Websters' suit against Dr. Walker by failing to raise them previously.  *See Wallace*, 606 F.3d at 418; *Resnick*, 594 F.3d at 568.  However, the Court can easily resolve this issue on the merits.  The Indiana Supreme Court's holding in *Sword* was not premised on the plaintiffs having a lack of alternative remedy.  As this Court has explained numerous times, *Sword* was premised "on the reasonableness of the patient's belief that the hospital or its employees were rendering health care." *Sword*, 714 N.E.2d at 152.  Accordingly, whether the Websters have or had an alternative remedy is irrelevant.

As for CDI's policy arguments that it should not be required to pay greater damages than Dr. Walker, this Court will not rewrite Indiana's Medical Malpractice Act to afford protection to individuals or entities who are not qualified health care providers under the Act and who did not pay into the Patient's Compensation Fund. *See* Bowen, *supra* Part III.A.1 at 19 (explaining the statutory background of the Patient's Compensation Fund). After advocating so fervently that it is not a health care provider under the Act, it is curious that CDI now urges this Court to issue a ruling that would, in effect, extend the Act's protections to it. The Court declines to do so and finds that CDI's arguments regarding the Websters' claim against Dr. Walker are meritless.

**B. Vicarious Liability under Restatement (Second) of Torts § 429**

CDI next argues that the "threshold predicate for § 429 vicarious liability" is the relationship between the employer and the independent contractor who provided negligent services. [Filing No. 183 at 15.] However, CDI argues that there is no evidence that it "hired, employed, contracted with or paid Dr. Walker for the radiological physician services provided to Courtney Webster," and, as such, "vicarious liability under § 429 may not be imposed" on CDI. [Filing No. 183 at 15.]

In support of its argument that CDI "did not, and could not, provide any radiological physician services to Courtney Webster," CDI cites to the trial testimony of its corporate representative, Henri Minette, and to the Amended Restated Management Services Agreement (the "Management Agreement") between Medical Scanning Consultants, P.A. ("Medical Scanning") and CDI. [Filing No. 183 at 12-15.] CDI argues that Mr. Minette's testimony shows that CDI provides Medical Scanning "with facilities, equipment and non-physician technical staff, and handles billing and collections," but that CDI "does not actually practice medicine because it is not a professional entity, is not permitted to practice medicine, and does not hire or provide medical

services." [Filing No. 183 at 13.] In addition, CDI points to the Management Agreement that provides that Medical Scanning "provides professional and technical radiology services to the general public through individual physicians who are employed or otherwise retained" by Medical Scanning, whereas CDI merely "provides or arranges for the provision of management and administrative services for various radiology practices." [Filing No. 183 at 14.] In addition, CDI highlights the portion of the Management Agreement that states that the relationship between CDI and Medical Scanning "shall be that of independent contractors, and nothing in this Agreement . . . shall be construed to create, an employer/employee relationship, agency, partnership, or joint venture relationship" between the two. [Filing No. 183 at 14.] CDI further points out that Dr. Walker's testimony shows that he was not employed by CDI, and that CDI "did not pay, employ or contract with Dr. Walker." [Filing No. 183 at 15.] Because § 429 imposes liability on "[o]ne who employs an independent contractor to perform services," CDI argues that it "cannot be a Sword defendant for the purposes of § 429 vicarious liability" because CDI is "essentially a landlord and provider of technological services" to Medical Scanning. [Filing No. 183 at 16-17.]

In their response brief, the Websters contend that "the evidence most favorable to the judgment (a.k.a the only evidence that can be considered in ruling on CDI's Rule 50 motion) is that CDI not only could provide medical services, CDI regularly did so." [Filing No. 185 at 18.] Here again, the Websters point to the testimony of Dr. Hostetter, the medical director at Medical Scanning Consultants, that "CDI is providing medical services to the patients in terms of providing their scans." [Filing No. 185 at 19.] Regardless, the Websters contend that "whether CDI did or did not provide medical services is irrelevant to the question of whether CDI can be held liable to the Websters under a *Sword* analysis." [Filing No. 185 at 19.] As for CDI's argument that "it is entitled to judgment as a matter of law because it had no relationship with Dr. Walker," the

Websters argue that this argument is unavailing because it "is premised on the text of § 429 . . . as opposed to § 429 as read and construed by the court in *Sword*." [Filing No. 185 at 20.] The Websters also argue that CDI is liable under the text of § 429 under analogous cases from other jurisdictions. [Filing No. 185 at 22.] The Websters contend that under *Sword* "[i]f the facility holds itself out as the provider of the care, it cannot escape liability by arguing that it merely contracted with the entity that employed or contracted with the negligent health care provider." [Filing No. 185 at 25.] They argue that the Indiana Court of Appeals has upheld jury instructions that did not require a direct relationship between a health care facility and the negligent health care provider. [Filing No. 185 at 26.]

CDI does not appear to address this particular argument in its reply brief, other than briefly reiterating that the relationship between the parties is a relevant factor under *Sword*. [Filing No. 191 at 12.]

CDI's arguments on this point are essentially a repeat of the arguments it made in its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a) on the third day of trial. [Filing No. 165; Filing No. 178.] At the time, the Court focused on the language of *Sword*, and in reaffirming its decision during the Rule 50(a) conference, it is to that same language that the Court once again turns. In *Sword*, the Indiana Supreme Court stated as follows

> We conclude that a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. A hospital generally will be able to avoid liability by providing meaningful written notice to the patient, acknowledged at the time of admission.

*Sword*, 714 N.E.2d at 152. The number of corporate or legal layers between a health care provider and a physician are not determinative under *Sword*. The key element present in *Sword* is a patient's belief, and this Court finds that a patient's belief is unaffected by the particular corporate form at

issue in any given scenario unless the patient has independent knowledge of such. This is true even in this case, which presents what this Court on Summary Judgment classified as a "complicated web of interrelated entities," [Filing No. 50 at 18], and what CDI's own corporate representative and general counsel characterized under oath as a "Byzantine" arrangement, [Filing No. 126 at 29]. Consistent with *Sword*, this Court instructed the jury to focus on the reasonableness of Ms. Webster's belief that CDI or its employees were rendering health care. The prevailing contractual agreements among and between the players is irrelevant to this issue. Accordingly the Court rejects CDI's argument that it is entitled to Judgment as a Matter of Law on the Websters' claims.

## C. Errors at Trial and the Damage Award

### 1. Errors at Trial

CDI also argues that it "did not receive a fair trial" because (a) "the Court's *in limine* order and evidentiary rulings kept the jury in the dark about the Websters' companion case pending before the Indiana Department of Insurance for medical malpractice against Dr. Walker and Medical Scanning," [Filing No. 183 at 17]; (b) "the Court erred by denying CDI Indiana's motion to bifurcate trial or, in the alternative, for trial in two (2) phases," [Filing No. 183 at 17]; and (c) the Court made errors in its final jury instructions, giving instructions 17, 20, and 21 over objections, [Filing No. 183 at 18].

In response, the Websters contend that CDI is not entitled to a new trial, that CDI "does not explain how the exclusion of this evidence in any way prevented it from arguing that Medical Scanning Consultants and Dr. Walker were the proper defendants," [Filing No. 185 at 27-28], and that CDI does not make any effort to argue that the Court's decision not to bifurcate the trial was an abuse of discretion, [Filing No. 185 at 28].

In its reply brief, CDI reiterates its argument that the "collective effect of the Court's rulings withheld critical information from the jury and limited arguments that CDI Indiana could make, thereby depriving the jury of critical information." [Filing No. 191 at 17.]

The Court notes at the outset that CDI's argument that the trial was unfair due to the Court's evidentiary rulings is conclusory and underdeveloped. CDI, for example, states that "[b]ased upon the legal principles argued above" it should have been allowed to present evidence of the Websters' malpractice case against Dr. Walker. [Filing No. 183 at 17.] Coming on the seventeenth page of CDI's brief, it is unclear to what argument CDI refers. Other than making a conclusory argument that CDI was "effectively prevented from presenting [its] case" [Filing No. 183 at 18], CDI makes no effort to demonstrate how the Court's evidentiary rulings were prejudicial. The argument is particularly wanting given CDI's position at trial that Dr. Webster was not negligent. The Court can discern no prejudice to CDI and it has demonstrated none.

Nor are CDI's Response in Opposition to the Motion *in Limine* , [Filing No. 124], or its Motion to Bifurcate, [Filing No. 73], helpful in determining the nuances of CDI's argument regarding prejudice. In the former, CDI simply argues that "the jury is certain to wonder why, if Plaintiffs believe that Dr. Walker failed to exercise reasonable care in this case, Plaintiffs haven't sued Dr. Walker." [Filing No. 124 at 4.] In the latter, CDI argued that "presentation of the sympathetic facts and damages at issue in the medical malpractice [claim] to the jury at the same time as the facts and law on the vicarious liability claim would likely provoke the jury's sympathy and engender confusion concerning the disparate nature of the factual and legal issues that the jury must decide in each claim." [Filing No. 73 at 2.] The Court addressed each of these arguments in ruling on the separate motions, noting that "many cases put before juries" have a strong emotional impact and that, "under the facts of this case, the Court is satisfied that a jury will be able to set

aside emotional considerations and perform its duty faithfully and impartially, consistent with the instructions it will be given at trial." [Filing No. 78 at 6-7.]  In addition, the Court resolved the potential for jury confusion by instructing the jury not to consider "any claims that the Websters may have against Dr. Walker, nor speculate as to why any claims are not raised in this action," [Filing No. 166-1 at 18], consistent with the Seventh Circuit pattern instruction, *see* Federal Civil Jury Instructions of the Seventh Circuit § 2.13, Withdrawal of Claims.  The Court reaffirms those rulings herein.

Similarly, the Court reaffirms the ruling it made when CDI made an offer of proof regarding the Websters' Motion *in Limine* 6.  CDI argued that evidence of the Websters' suit against Dr. Walker and Medical Scanning Consultants, P.A., proved the Websters' knowledge of the nature of the agency relationship between Medical Scanning Consultants and Dr. Walker.  The Court held that this evidence does nothing to prove or disprove Ms. Webster's knowledge of CDI's business organization and relationships prior to treatment, [*See* Filing No. 179 at 5-6], and the Court reiterates that reasoning here.

In addition, to the extent that CDI argues that the Court's prior evidentiary orders prevented it from arguing that it was not the proper "*Sword* 'employer' or 'defendant,'" [Filing No. 183 at 17], the Court reiterates its finding in Part III.B that the particular relationship and contractual agreements among and between the players is irrelevant to determining the reasonableness of Ms. Webster's belief that CDI or its employees were rendering health care.  Therefore, the Court finds that its prior evidentiary rulings had no bearing on CDI's ability to present its case pursuant to *Sword*.

*2. Remittitur*

In the alternative, CDI argues that it is entitled to remittitur because the award in this case was "monstrously excessive," is "in direct conflict with compensatory damages awarded in Indiana medical malpractice cases," and that courts within this circuit have affirmed remitted medical malpractice awards below the statutory damages cap. [Filing No. 183 at 18.]

The Websters argue that CDI is not entitled to remittitur because with the Indiana Medical Malpractice Act the Indiana legislature "made [it] clear that a non-qualified health care provider like CDI is not entitled" to the protection of the Medical Malpractice Act's damages cap. [Filing No. 185 at 30.]

In its reply brief, CDI cites to a California Court of Appeals case and argues that "courts have extended statutory medical malpractice damages caps to limit damages imposed upon a vicariously liable non-health care provider for the professional negligence of doctors. [Filing No. 191 at 18 (citing *Lathrop v. HealthCare Partners Med. Grp.*, 114 Cal. App. 4th 1412 (Cal. Ct. App. 2004)).]

The Court begins its analysis by distinguishing the California Court of Appeals decision in *Lathrop* from the case at hand. *Lathrop* extended California's Medical Injury Compensation Reform Act ("MICRA") to an entity that was not a health care provider under the MICRA, noting that if it held otherwise "Plaintiffs would need only to sue the entity employing the negligent physician to circumvent the MICRA cap." 114 Cal. App. 4th at 1426. Here, the Court is dealing not with the MICRA, but with Indiana's Medical Malpractice Act. As previously noted, since its inception Indiana's Medical Malpractice Act has provided that a "health care provider who fails to qualify under this article is not covered by this article and is subject to liability under the law without regard to this article." Ind. Code § 34-18-3-1; Bowen, *supra* Part III.A.1 at 18 n.36

(quoting the Act's 1976 language). Given that the text of the Act itself limits coverage only to qualified entities under the Act, the Court declines to adopt the reasoning of the California Court of Appeals.

Once again, this Court emphasizes that it will not rewrite Indiana's Medical Malpractice Act to afford protection to individuals or entities who are not qualified health care providers under the Act and who did not pay into the Patient's Compensation Fund. Therefore, the Court declines to apply the damages caps set forth in the Act to CDI.

As for CDI's general argument that the award is "monstrously excessive," [Filing No. 183 at 18], this Court cannot and does not find that awards of $14,000,000 and $1,000,000 respectively for the loss of 36.2 years of life expectancy and consortium of a formerly vibrant, competent, and engaged wife, mother, and professional woman is excessive in the least.[10] As such, the Court rejects CDI's request for remittitur.

## IV.
### CONCLUSION

The Court finds that CDI has failed to meet its burdens under Federal Rules of Civil Procedure 50 and 59 and, therefore, CDI's Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e), [184], and its Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b), or, alternatively, for a New Trial or Remittitur pursuant to Fed. R. Civ. P. 59(a), [182], are **DENIED**.

Date: 8/29/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[10] In Final Instruction No. 32, to which neither party objected, the jury was instructed that "the average life expectancy of a 48-year old white female is 36.2 years." [Filing No. 166-1 at 34.]